## BROWN *v.* SWARTHOUT.

SPECIFIC PERFORMANCE—CONTRACTS—UNCERTAINTY.

A contract between the owners of a patent and complainant to assign the patent to a corporation to be organized, for one-fourth of the capital stock, the balance to go to promoters, represented by complainant, to procure capital to manufacture and sell the invention, is too uncertain in its terms to justify a decree of specific performance, since it does not determine the amount of capital stock the corporation should have.

Appeal from Wayne; Rohnert, J.   Submitted June 10, 1903.   (Docket No. 64.)   Decided October 27, 1903.

Bill by Henry N. Brown against George M. Swarthout, Edward Stein, and George E. Kerwin to enforce the specific performance of a contract.   From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*Robert M. Brownson*, for complainant.

*E. J. Stoddard*, for defendant Swarthout.

*Parker & Burton*, for defendant Kerwin.

Montgomery, J. This is a bill filed to enforce the specific performance of a contract which, after reciting that defendants Swarthout and Stein are the owners of patents for generating gas from oil and water, proceeds as follows:

"*And whereas*, said Swarthout and Stein are wishing to interest capital to manufacture and put on the market the above-named inventions and appliances. In order to do so, the above-named parties of the first part agree with Henry N. Brown, of Detroit, Michigan, party of the second part, that, if the said party of the second part interest capital to form a company to manufacture and market said inventions and appliances, they, the said parties of the first part, will contribute all their inventions now made, together with all improvements that may hereafter be made, and, for their part in said company to be formed, will assign to said company above patents and improvements that may be made. Said interest in said projected company to be one-fourth of the entire capital of said company; the said one-fourth to be paid-up capital, and to be divided between, said Swarthout and Stein as they themselves may direct. The balance of stock of said projected company is to go to the promoters of said company, herewith represented by Henry N. Brown, party of the second part, for the purpose of procuring capital to make said appliances and market them.

"This agreement shall hold good for six months from date, and if experiment plants made and put in are not good or have no value, and no permanent company is formed, then at the end of the above six months this agreement is null and void.

"When money is available to erect experimental plants, said Swarthout and Stein shall have first employment, and shall have direction of making and setting up said plants at $2.00 per day and traveling expenses, both if needed; if only one at first, then that one to be Swarthout. The remuneration of $2.00 is only to apply during experimental period. After the experiments are proved successful,

then company is to be formed with sufficient capital to carry on the business. Amount of capital to be determined as soon as successful experiments are made and successful plants in operation."

The bill then avers that complainant interested three other parties, William S. Vreeland, George S. Wallace, and George E. Kerwin, who, together with complainant, agreed to contribute such an amount of money as would be necessary to erect an experimental plant and defray the expenses of incorporating the projected company; that immediately thereafter complainant notified defendants Swarthout and Stein that he had interested the capital necessary to do the experimental work and organize the proposed company, and requested Swarthout to come to Detroit and begin the erection of the experimental work; that Swarthout, on one pretext or another, neglected to carry out his part of the contract until the 1st of May, 1902, when he came to Detroit; that it was not until the 9th of May that he began the erection of the experimental plant; and that he continued to carry on said work until May 31st.

The bill further alleges that complainant carried out his part of the terms of said contract with Swarthout and Stein; that he paid Swarthout the salary agreed upon, and furnished him with the materials, tools, and appliances he needed or asked for; that, prior to June 1st, he had interested sufficient capital to form a stock company to manufacture and market said hydrocarbon burners; that on May 31st he arranged with one Prof. Charles L. Weil to make certain experimental tests, the results of which tests were to determine the amount of capital stock of said projected company; yet the said Swarthout refused to proceed with said tests, and also refused to further carry out his part of the contract. The bill further charges that Swarthout, in defiance of complainant's rights, has sold and assigned, or is about to sell and assign, the patents to George E. Kerwin, the defendant. The bill prays a specific performance. To this bill a demurrer was filed,

and from a decree sustaining the demurrer complainant appeals.

We think but one question need be discussed. The contract, in its inception, was not only not mutual, but it was too uncertain in its terms to justify a decree of specific performance. While it may be true, as claimed by complainant's counsel, that a contract which, in its inception, is not mutual, may be enforced where the party having the option to proceed with the contract has performed on his part, so that a specific performance upon agreed terms may be decreed, such is not this case. Here it is assumed that the experimental work was undertaken to make a test for the purpose of ascertaining how much capital stock should be required for the company. Who is to determine this question? Certainly no court can say, and whose judgment is to prevail? The business might be conducted upon a small scale or a large scale. The contract contains no provisions for this, nor for the employment of an expert to ascertain and determine the proper amount of capital stock. Up to this time no corporation has been formed; no stock is provided or within the reach of the defendants. The complainant is not, by the terms of this contract, entitled to any portion of the capital stock, except what he pays for. The agreement is that, after one-fourth of the capital stock is divided between Swarthout and Stein, the balance of the stock is to go to the promoters of said company, represented by complainant, Brown, for the purpose of procuring capital to make said appliances and market them. Brown would not become the owner of this stock. It would have to be converted into money to be used for the purposes of the business. We think the bill is defective, in that it fails to show that a company was organized. It is true, it asserts that complainant had interested sufficient capital to form a stock company, but in the next sentence it asserts a default in defendant for failing to make a test for ascertaining how much capital should be required to form a stock company. These two statements are hardly consistent. The fault

with the contract is that it made no provision for determining how much capital stock should be required, and defendants cannot be said to be in default for refusing to arrange to submit that question to Prof. Weil,—a contract that in its terms is too indefinite and uncertain to be susceptible of specific performance.

The decree will be affirmed, with costs.

The other Justices concurred.